# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS




FILED 2/25/2021 JMK
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Haroon Arrasheed )
)
_____ )
)
Plaintiff(s), ) Case Number: 1:19-cv-07614
)
v. )
Chicago Public Schools )
)
_____ )
)
Defendant(s). )

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. This is an action for employment discrimination.

2. The plaintiff is  Haroon Arrasheed  of the county of  Cook  in the state of  Illinois .

3. The defendant is  Chicago Public Schools , whose street address is  42 W. Madison St ,
(city) Chicago  (county) Cook  (state) IL  (ZIP) 60602
(Defendant's telephone number)  (773) – 553-1000

4. The plaintiff sought employment or was employed by the defendant at (street address)
  42 W. Madison St.  (city) Chicago
  (county) Cook  (state) IL  (ZIP code) 60602

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

5. The plaintiff [*check one box*]

    (a)  ☐  was denied employment by the defendant.

    (b)  ☐  was hired and is still employed by the defendant.

    (c)  ☒  was employed but is no longer employed by the defendant.

6. The defendant discriminated against the plaintiff on or about, or beginning on or about, (month)__August__, (day)__1__, (year)__2017__.

7.1 *(Choose paragraph 7.1 or 7.2, do not complete both.)*

    (a) The defendant is not a federal governmental agency, and the plaintiff [*check one box*] ☒*has* ☐*has not* filed a charge or charges against the defendant asserting the acts of discrimination indicated in this complaint with any of the following government agencies:

    (i)  ☒ the United States Equal Employment Opportunity Commission, on or about

    (month)_____ (day)_____ (year)_____.

    (ii)  ☐ the Illinois Department of Human Rights, on or about

    (month)_____ (day)_____ (year)_____.

    (b) If charges *were* filed with an agency indicated above, a copy of the charge is attached. ☒ Yes, ☐ No, **but plaintiff will file a copy of the charge within 14 days**.

    It is the policy of both the Equal Employment Opportunity Commission and the Illinois Department of Human Rights to cross-file with the other agency all charges received. The plaintiff has no reason to believe that this policy was not followed in this case.

7.2 The defendant is a federal governmental agency, and

    (a) the plaintiff previously filed a Complaint of Employment Discrimination with the

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

2

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

defendant asserting the acts of discrimination indicated in this court complaint.

☐ Yes (month)_____ (day)_____ (year)_____

☐ No, did not file Complaint of Employment Discrimination

(b) The plaintiff received a Final Agency Decision on (month)_____ (day) _____ (year) _____.

(c) Attached is a copy of the

(i) Complaint of Employment Discrimination,

☐ Yes   ☐ No, but a copy will be filed within 14 days.

(ii) Final Agency Decision

☐ Yes   ☐ N0, but a copy will be filed within 14 days.

8. *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

(a) ☐ the United States Equal Employment Opportunity Commission has not issued a *Notice of Right to Sue.*

(b) ☐ the United States Equal Employment Opportunity Commission has issued a *Notice of Right to Sue*, which was received by the plaintiff on (month)_____ (day)_____ (year)_____ a copy of which *Notice* is attached to this complaint.

9. The defendant discriminated against the plaintiff because of the plaintiff's [***check only those that apply***]:

(a) ☐ Age (Age Discrimination Employment Act).

(b) ☒ Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]
Rev. 06/27/2016

3

    (c) ☒ Disability (Americans with Disabilities Act or Rehabilitation Act)

    (d) ☒ National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

    (e) ☒ Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

    (f) ☒ Religion (Title VII of the Civil Rights Act of 1964)

    (g) ☐ Sex (Title VII of the Civil Rights Act of 1964)

10. If the defendant is a state, county, municipal (city, town or village) or other local governmental agency, plaintiff further alleges discrimination on the basis of race, color, or national origin (42 U.S.C. § 1983).

11. Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for 42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988; for the ADA by 42 U.S.C.§12117; for the Rehabilitation Act, 29 U.S.C. § 791; and for the ADEA, 29 U.S.C. § 626(c).

12. The defendant [*check only those that apply*]
    (a) ☐ failed to hire the plaintiff.

    (b) ☐ terminated the plaintiff's employment.

    (c) ☒ failed to promote the plaintiff.

    (d) ☐ failed to reasonably accommodate the plaintiff's religion.

    (e) ☐ failed to reasonably accommodate the plaintiff's disabilities.

    (f) ☒ failed to stop harassment;

    (g) ☐ retaliated against the plaintiff because the plaintiff did something to assert rights protected by the laws identified in paragraphs 9 and 10 above;

    (h) ☒ other (specify): Accommodations were made but Manager Carolyn Jourdan and

Rita (Rituparna) Raichoudhuri violated the accommodations.

_____

_____

_____

13. The facts supporting the plaintiff's claim of discrimination are as follows:

Please see attached.

_____

_____

_____

_____

14. **[*AGE DISCRIMINATION ONLY*]** Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15. The plaintiff demands that the case be tried by a jury. ☒ Yes ☐ No

16. THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [*check only those that apply*]

    (a)   ☐ Direct the defendant to hire the plaintiff.

    (b)   ☐ Direct the defendant to re-employ the plaintiff.

    (c)   ☐ Direct the defendant to promote the plaintiff.

    (d)   ☐ Direct the defendant to reasonably accommodate the plaintiff's religion.

    (e)   ☐ Direct the defendant to reasonably accommodate the plaintiff's disabilities.

    (f)   ☐ Direct the defendant to (specify): _____

    _____

    _____

_____

_____

_____

(g) ☒ If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) ☒ Grant such other relief as the Court may find appropriate.

\_/s/ Haroon Arrasheed_____
(Plaintiff's signature)

\_Haroon Arrasheed_____
(Plaintiff's name)

\_438 E. 144th Street_____
(Plaintiff's street address)

(City)\_Dolton_____(State)\_\_IL_____(ZIP)\_60419\_\_\_

(Plaintiff's telephone number) (\_773\_) – \_553-1000_____

Date: \_02/20/2021_____

x

| EEOC Form 5 (11/09) | | | |
|---|---|---|---|
| **CHARGE OF DISCRIMINATION**<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s):<br>440-2019-02870 | |
| | Illinois Department Of Human Rights | and EEOC | |
| | *State or local Agency, if any* | | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone | Year of Birth |
|---|---|---|
| Mr. Haroon Arrasheed | (708) 646-9459 | 1975 |

| Street Address | City, State and ZIP Code |
|---|---|
| 438 East 144th Street, | DOLTON, IL 60419 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| CHICAGO PUBLIC SCHOOLS | 501+ | (773) 535-3285 |

| Street Address | City, State and ZIP Code |
|---|---|
| Nicholson STEM Academy, 6006 S. Peoria St., | CHICAGO, IL 60621 |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☒ RACE ☐ COLOR ☐ SEX ☒ RELIGION ☐ NATIONAL ORIGIN<br>☒ RETALIATION ☐ AGE ☒ DISABILITY ☐ GENETIC INFORMATION<br>☐ OTHER *(Specify)* | Earliest: 08-01-2018 Latest: 07-19-2019<br>☒ CONTINUING ACTION |

THE PARTICULARS ARE (*If additional paper is needed, attach extra sheet(s)*):

I was hired by Respondent in or around August 2013. My most recent position was STEM Integration Specialist. Respondent was aware of my religion and my disability. During my employment, I was subjected to harassment. I complained of discrimination. On or about March 18, 2019, I was constructively discharged. Subsequently, I have applied for new positions and have not been hired.

I believe I have been discriminated against because of my race, Black, religion, Muslim, and in retaliation for engaging in violation of Title VII of the Civil Rights Act of 1964, as amended.

I believe I have been discriminated against because of my disability, and in retaliation for engaging in protected activity, in violation of the Americans with Disabilities Act of 1990, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Digitally signed by Haroon Arrasheed on 08-14-2019 03:16 PM EDT** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) |

PRIVACY ACT STATEMENT: Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1.   FORM NUMBER/TITLE/DATE.  EEOC Form 5, Charge of Discrimination (11/09).

2.   AUTHORITY.  42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3.   PRINCIPAL PURPOSES.  The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4.   ROUTINE USES.  This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws).  Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination.  This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions.  A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5.   WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.  Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of.  Without a written charge, EEOC will ordinarily not act on the complaint.  Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed.  Charges may be clarified or amplified later by amendment.  It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA.  Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements.  You will be told which agency will handle your charge.  When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter.  Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings.  Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge.  Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation,

proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Haroon Arrasheed | **Case Number:** 1:19-cv-0716 |
| Plaintiff | |
| v. | **Judge:** Honorable Steven C. Seeger |
| Chicago Public Schools CPS | **Magistrate Judge:** Honorable M. David Weisman |
| Defendant | |

1. The Plaintiff Haroon Arrasheed, former employee of Chicago Public Schools (CPS) had his Civil Rights violated by employees of CPS Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 (non- prisoners). Some of the same employees also violated the American Disabilities Act by not complying with the accommodations provided by CPS' ADA Department.

2. Carolyn Jourdan, former Manager of the Career and Technical Education (CTE) Team was hired by nepotism in August 2017. After she received a vote of no confidence for being the Principal of Roosevelt High School, she needed a job. She was selected by her friend who hired her as a teacher 20 years ago by the then Chief of Office of Career and Success (OCCS) Alan Mather.

3. Carolyn came to The Central Office of Chicago Public Schools came with a record of complaints, accusations of racism, bullying harassment. She does outrageous acts in front of witnesses. She often lies to discriminate, harass, bully, etc. She lies even when there's several witnesses present, several witnesses on a group forum and several witnesses via email observing the opposite of her prejudiced behavior.

4. The Plaintiff personally witnessed Carolyn bully, harass and intimidate a student. He personally sent a complaint to the Office of the Inspector General (OIG) of CPS. The complaint was filed in Winter 2019. He listed names, dates, location, witnesses the teacher of the student, etc. She has not been reprimanded. She's had several complaints filed against with the EOCO Department at CPS and still has a license to do whatever she wants. She's enabled and protected by CPS.

5. Three minority veterans with 10 - 13 years of CTE experience as Sr. Program Coordinators (Prog. Managers) were passed up for this role. Part of the hiring process included an assessment. An assessment that no one working outside of OCCS and CTE could complete.

6. The assessment was geared towards improving processes within internal CTE Teams. An outsider like Carolyn Jourdan couldn't possibly complete such an assessment successfully. Her hiring of her was pure nepotism committed by Alan Mather.  Rita followed suit with "placing" four of her trusted employees in roles in the Central Office almost immediately after her arrival from her last place of employment, Wells High School, some without interviews, but appointments. One of those employees was Shadia Daniels.

7. For Rita to not have her research for her doctorate exposed she placed Shadia Daniels in the role of CTE Information Technology Curriculum Specialist. As the CTE IT Program Coordinator, the Plaintiff was the only one that knew all the curricula for the cluster, vendors, licenses, etc. Had great relationships and rapport with all the Technology and Computer Science Teachers as well.

8. He taught 4 or 5 of the curricula and was an Adjunct Professor for City Colleges which is needed by the six STEM High Schools.  Shadia Daniels did not have this experience. The Plaintiff knew that once Shadia Daniels was entered in the race for the Curriculum Specialist that he wouldn't get the job due to political unethical reasons.

9. He knew about the relationship between Rita and Shadia. Also, he knew that Shadia Daniels wrote Rita's dissertation for her Doctorate, he didn't have a chance. Shadia Daniels went from making around $65,000 - $90,000 in a year or less at Chicago Public Schools.

10. Not because of her qualifications, but a debt that Rita Raichoudhuri owed her for the research that she stole from Shadia Daniels to complete her EdD in Education from the University of Chicago. This speaks to the character of Rita Raichoudhuri.


11. The excuse given to the Plaintiff for not hiring him was that he didn't have a traditional education

degree mandated by Human Resources. He was also told that the person in that role would need to modify more than one curriculum. The Plaintiff's degrees, experiences, licenses, and certifications include curriculum from seven different curriculum.

12. Prior to Shadia Daniels being interviewed for the Information Technology Curriculum Role, she had been interviewed for the Computer Science CS Curriculum Role. Shadia did not land that role which is almost the same role, Computers Science and Technology Curriculum. Two of the very same people that interviewed her for the CS curriculum role interviewed her not too long after and she landed the CTE IT Information Technology role.

13. The main difference in the roles is that Lucia Detorri was the Executive Director of the Computer Science Department and Rita was the Executive Director for OCCS. Both departments fall under OCCS. Shadia wasn't good enough for Lucia but good enough for Rita. When Shadia interviewed for the CTE IT Curriculum Specialist role, curriculum experience appeared almost everywhere on her resume.

14. Rita (Rituparna) Raichoudhuri was hired in October 2017 as Executive Director of OCCS. She was the Principal from Wells High School in the CPS School District. Rita replaced former Executive Director of OCCS, Veenu Verma.

15. Immediately after they both Carolyn and Rita were hired, they created a very hostile environment. They created a culture of fear, 'gotcha', 'I'm going to get you, and the environment within our department. Also, any accusation (false or factual) that was said via any channel or by anyone was used against the team members, especially the Plaintiff without any type of investigation of the Plaintiff having the opportunity to please his case.

16. The Plaintiff was treated differently than his other teammates. The main difference between the Plaintiff and his other minority teammates is that is he in an African American Male Muslim that has two disabilities. Carolyn Jourdan and Rita Raichoudhuri also violated the ADA act by ignoring the accommodations provided by the ADA by doing the opposite of the accommodations that were approved for the Plaintiff.

17. In August 2018, Plaintiff had a constructive discharge as a Sr. Career and Technical Education (CTE) for Information Technology from the Central Office of Chicago Public Schools. He resigned from his position and took another lower paying position at Nicholson STEM Academy, an elementary school within the CPS District. He had no choice due to the hostile work environment that Rita Raichoudri and Carolyn Jourdan created with a blind eye from Chief Alan Mather.

18. The character of the Plaintiff defamed his character by using the testimony of an employee in May 2018. The employee gave a documented two-year testimony but was hired around March 2018 or April 2018. She was employed for two months but gave a two-year testimony. Part of her testimony was that a high-level Apple Executive was disrespected by Plaintiff in a meeting with up to 12 people that their witness was 25 minutes late to. With her disrespectful tardiness, she missed the Plaintiff's presentation in the meeting.

19. The Plaintiff had / has two documented disabilities, ADHD, and Major Depression. He sought assistance from the internal ADA (American Disabilities Act) department in CPS when his disability got worse. After approval of accommodations, a letter was sent to Alan, Rita, and Carolyn.

20. At the point, Rita and Carolyn increased their harassment, bullying, intimidation, and deliberate derailment of essential work that needed to be done. For instance, Carolyn started scheduling one on one meetings with Plaintiff sometimes twice per week and started giving him daily fictitious deadlines

to create a 65-page PIP Performance Improvement Plan write up. A PIP that had been revised three times to trap Mr. Plaintiff.

21. The CTE Team has six other employees. Some hadn't had a one on one with Carolyn in more than a month. Some didn't meet with her but every other week. Plaintiff received different treatment than his team members on more than one occasion.

22. After Carolyn's behavior continued, the Plaintiff requested more assistance from the ADA. Plaintiff was then told by that member of the ADA Department that it is their duty to inform him to file a complaint when they notice discrimination. Plaintiff filed a complaint with the internal office of Ethics within Chicago Public School in their Equal Opportunity Compliance Office (EOCO) Department. To his knowledge, nothing was investigated. Plaintiff then filed a claim with the EOCO and was granted the right to sue Chicago Public Schools.

23. Prior to The Plaintiff filing a complaint with the EOCO he complained to Chief Alan Mather, Human Resources Director Christina Jourdan, Deputy Chief of OCCS Manisha Jacoby, an internal ADA that's an attorney. The Plaintiff also sought advice unofficially from many people in CPS, including the members of the Chicago Teachers Union (CTU), Managers, Administrative Assistants to high level people besides the attorney for the ADA that noticed that he was being discriminated against and told him to file a complaint.

24. The Plaintiff Haroon Arrasheed was an almost six-year respected employee of Chicago Public Schools. He worked as an Information Technology at two STEM High Schools and as an Adjunct Professor for dual enrollment with Richard Daley College and Sarah Goode High School. He served under three different principals for three years as a teacher from August 2013 through June 2016. After teaching, after going through a round of interviews, he was then hired by Broad Scholar Veenu Verma Executive Director of OCCS as a Sr. Information Technology Career and Technical Education Program Manager.

25. After one year of the Plaintiff working as Sr. Information Technology Career and Technical Education Program Coordinator, Carolyn Jourdan became his manager., via any channel or by anyone was used against the team members, especially the Plaintiff.

26. In the Plaintiff's case, they tried about eight to ten times to get me by creating fake issues, soliciting bogus information, etc. They finally created several bogus stories, data, etc. to finally get the Plaintiff. When they did, their method(s) of attack was via a Performance Improvement Plan or PIP. They placed the Plaintiff on three PIPs full of bogus.

27. information. For instance, the Plaintiff was accused of violating an attendance policy by not having a detailed description of a meeting on the Plaintiff's calendar. The evidence that they produced was a screenshot of another employee's calendar, not mine.

28. Carolyn Jourdan under the leadership of Rita Raichoudhuri with the hostile environment that they created, hostile acts, bullying, intimidation, harassment, and outright fictional stories, created several traps to ruin the Plaintiff's character, work ethic, career, reputation, qualifications, experience, etc. so that he wouldn't be allowed to work in an environment such as Chicago Public Schools anymore.

29. The Plaintiff has many credentials that are still unmatched by anyone in CTE or the Computer Science Dept. The Plaintiff left the Information Technology Industry to teach Technology in the inner city. He changed his lifestyle and his family's lifestyle to help other people. His work ethic, experience etc. was highly praised until Caroyln Jourdan with no CTE or Information Technology experience

decided that she didn't like him and that he needed to go.

30. Some of the attacks against the Plaintiff are documented in three Performance Improvement Plans (PIP). The last PIP was 65 pages. There were several accusations that Rita Raichoudri and Carolyn Jourdan solicited from other employees in the OCCS Department. The Plaintiff was never informed, notified, or given an opportunity from Management to clear up doubts, plead his case etc.

31. The Plaintiff also believes that there were other motives and deceitful measures taken to receive such information. Also, the Plaintiff believes that the employees that were solicited may have provided false information out of fear of retaliation from Rita and Carolyn due to the hostile environment that they created.

32. The first improvement plan was about a yearly capstone event that was to take place in May 2018. The planning for the event started in May 2017, months before Carolyn and Rita started in the OCCS Department. The planning started in May 2017 at the end of the same event when the hosts at the venue told the Plaintiff that they would host again in 2018. Carolyn, Rita, and Allie Parker have never attended or participated in a Capstone Event.

33. Carloyn reported that the Plaintiff completely lied about having a Capstone Event. She determined that the entire event was a lie. She didn't contact Motorola Mobility Solutions, 50+ Teachers that were communicated with, biweekly planning meeting participants or anyone. The way that her racist, bully harassing, laying, unchecked ways worked in her favor once again.

34. In the Plaintiff's first PIP meeting he named everyone involved with the planning of this (non-mandatory) event. He had his laptop with him and requested that Carolyn and Mary Ernesti view his calendar, emails, most recent email that confirmed the venue on the day of the event, etc. They both brazenly refused to view the correct data that would have immediately revealed Carolyn's character assassination.

35. The Plaintiff complained directly to the Chief of The Office of College and Career Success about the matter Alan Mather. Alan questioned Carolyn about the false claims that she made, after she had been getting away with doing whatever she wanted, even in front of several witnesses (including mistakenly harassing a student at an event accusing her of being out of uniform, she had no authority, place, or professionalism in her method) Unfortunately, she lied again to Alan with her.

36. However, in her response, Carolyn lied again and told Alan Mather that she told each one of the Plaintiff's teammates that if they receive a calendar request that doesn't have great details of a meeting. That we must access the author of the meeting requests invite on their calendar and to edit it ourselves. It doesn't take any education to recognize how absurd and ignorant such a statement is.

37. Carolyn Jordan also, if the calendar isn't detailed enough, create a copy of the meeting invite on your calendar and detail it there. This is a great example of the absurd lies that Carolyn told and people blindly accepted it. the Plaintiff personally asked ALL the Plaintiff's teammates if Carolyn instructed them to do so and the answer was no. It didn't matter, Alan Mather had great trust in his racist friend, and he let her off the hook again.

38. The Plaintiff complained directly to the Chief Alan Mather about the ridiculous claims around May 2018. The claim that the Plaintiff lied about his capstone, that he was disrespectful in a very high-level meeting, that he missed meetings that he was deliberately not invited to, that he played a role in the Apple project being a complete failure, that Troy Williams attempted to illegal use Federal Perkins money for his department, etc. Alan Mather turned a blind eye on it as well. A meeting with all parties involved would clear everything up. The data is not hard to trace.

39. Every year there's a major CTE even for most if not all CTE Programs called the Capstone. The CTE IT Cluster, that the Plaintive Managed is the largest cluster. IT involves around 55 teachers from 35 schools. The Plaintiff As a former Information Technology Teacher has experienced three of these events and then became the main person to plan the event twice.

40. However, after the last event the Plaintiff was then ordered to attend a meeting that included Carolyn and Mary Ernesti from the legal department. Carolyn stated that the Plaintive made everything up about the Capstone and the planning of the IT Capstone. The Plaintiff had several meetings dating prior to Carolyn being his manager that he displayed in this meeting, Carolyn and Mary refused to look at his calendar and continue with the disciplinary action.

41. In a PIP meeting in July 2018 with Carolyn and Mary Ernesti, Carolyn produced 65 pages of incorrect information, solicited information from colleagues that made up, twisted, spun etc. Carolyn presented a marked up 'run of document that was used from the previous year to "show" The Plaintiff how to do it. She presented her lies about the events as facts that are completely incorrect.

42. The document that she presented wasn't used for the 2018 Capstone, it was used for the 2017 Capstone. The CTE Department paid a Project Manager $25,000 to create that document. The document was approved by Veenu (Broad scholar) as well. The Plaintive emailed a completely different run of show to all his teachers, Carolyn, volunteers, etc.

43. That wasn't the only lie that Carolyn emotionally lied about. She also presented a volunteer list with one or two names handwritten allegedly by the Plaintiff as proof that his event was a mess, volunteers (who are volunteers from previous events). The Plaintiff has a Masters in IT, he doesn't handwrite much of anything. He submitted a Google form to his volunteers, with times they were available duties that they were assigned, etc. This data was then automatically transferred into a spreadsheet. The Plaintiff presented that electronic document to Carolyn as well, but she decided to lie to HR, Legal, etc.

44. A major issue that happened is regarding a very large initiative that was orchestrated by the Mayor's Office (Rahm Emmanuel). Acting Director of the Computer Science Dept, of Troy Williams from a different department tried to plan, manage, implement this city-wide project by manipulating federal funds illegally that his department is not mandated to use. Troy also did not include anyone of his plan to bring Apple in under CTE. Troy was not a CTE Employee and had no rights to the funds. The Apple Technology Company formed a partnership with Chicago Public School, City Colleges of Chicago, and the City of Chicago.

45. The Plaintiff reported to Carolyn that Troy Williams was discriminating against him and manipulating the system to underhandedly bring Apple into our district. He explained that Troy's actions violated many rules of the Federal Perkins Grant, Carolyn decided to protect Troy told the Plaintiff that he may be jealous of Troy. She also told him that the Plaintiff have personal issues with Troy, not the business of trying to prevent fraud.

46. A Principal of a High School was about to be audited about her curriculum by an external agency. It was then exposed that her federally funded program that the Plaintiff supported wasn't being handled properly. Her teacher along with 3 teachers were recruited and flown out to California to learn an unauthorized curriculum to teach it during the school year.

47. This teacher who happens to be a close friend of our CEO, stated in an email to his principal (friend of then Mayor Emmanuel) very clearly the plan to turn his school into a pilot program to become a school hosted by Apple. He stated that he was given the go-ahead from then-director Brenda

Wilkerson and District Integration Manager Troy Williams.

48. The Plaintiff was not involved in that process. If that school had been audited by the Illinois State Board of Education, all our funding would be in jeopardy and even the employment of that teacher selected by Troy Williams.

49. In an emergency ordered by Rita R. the Plaintiff was ordered to rush to that school to calm things and assure that the teacher was teaching the right curriculum. The principal stated that her teacher was authorized by downtown (central office). the Plaintiff explained to her what the rules were, and she was singing the Plaintiff's praises and another employee that went with the Plaintiff (whose wife is an attorney) that no one downtown knew about.

50. The principal was very happy, told us to stop by any time that we wanted, offered us candy, etc. the Plaintiff asked her if she could please inform Rita R. of this and she said that she had been texting her the whole time and put in a good word. About a week later, the Plaintiff asked Rita if she had spoken to that principal "her friend". She responded by saying that she hadn't spoken to her and hadn't heard anything.

51. the Plaintiff knew that at that point, Rita was planning on somehow manipulating that situation and she did. Despite a teacher stating clearly that the Plaintiff wasn't involved, etc. They decided to put the blame on the Plaintiff. Rita asked Carolyn to ask the Plaintiff to reply to an email that the principal her friend sent informing her of the rules, etc. regarding authorized programs, etc.

52. This conversation was above the Plaintiff's pay grade, the Plaintiff knew that they were up to something. They had the Plaintiff write an email that they edited and approved to send to the principal. At first, the principal complied and said that things will be fine and that they will follow the rules.

53. Carolyn then asked the Plaintiff to reply to her and ask her if her teacher would get students certified by the end of the year. It was really a moot point that close to the end of the year. A screen capture of the video showing Rita and Carolyn's edits can be viewed here: https://goo.gl/AwyLfA

54. The principal then responded and berated the Plaintiff about how she felt threatened by receiving an email so late at night, she's unfamiliar with how the program works, unfamiliar with federal law etc. She was very upset, and she also lied. You can't have a CTE Program at your school unless you're fully informed. There's an application process, site visits, vetting process etc. Carolyn then ordered the Plaintiff not to respond to the email anymore and that Rita would take over.

55. This time Rita responded immediately and told the principal to call her. Next, the principal responded in a very positive and way over the top. She praised Rita (her friend) on her great support and customer service. It was a complete setup, railroad, etc. Whatever acronym fits.

56. There are many examples from the Plaintiff's story on how principals protect one another. One story included a principal lying on the Plaintiff saying that the Plaintiff hadn't visited his school. the Plaintiff had been there five or six times, checked in with him, physically signed in & swiped in. The proof is there but it didn't matter because a principal said it. He has now been removed from his school because he allowed a volunteer to be hired as a coach and the coach had 40 reported sexual abuse incidents there with a student. Is his word being valid?

57. Other lies include being blamed for an epic failure for a city-wide Apple project where the Plaintiff deliberately left out of planning, the announcement, partnership with City College, the City of Chicago, etc. the Plaintiff was accused of misusing funds that deliberately were being held up by the very person (Troy. Williams) who was discriminating against the Plaintiff, attacking the Plaintiff's character, etc.

58. Next, the Plaintiff was accused of not participating in (Apple, Computer Science Dept. CAFECS, etc.) meetings that Troy deliberately didn't invite the Plaintiff to. Troy was protected by Alan Mather, Rita, Carolyn as if he was a principal. the Plaintiff was accused of disrespecting a high-level Apple representative by Luccia Dettori (Directory of Computer Science Department) who was 25 min late to the meeting and missed the Plaintiff's presentation. the Plaintiff was accused of not supporting a server at a school that the Plaintiff never ordered, have never order, and didn't exist. the Plaintiff was managed programs not hardware. Accused of tampering with the Plaintiff's time at work (not having details in meeting request that came from other people.

59. The Plaintiff was sick and sought help from the ADA dept. They complied, however, Carolyn and Rita sensed blood. Carolyn began to give the Plaintiff (only) daily deadlines and started meeting with twice per week to "help" the Plaintiff. Nothing in CPS moves daily. It was fictitious deadlines to make the Plaintiff look like an idiot and that the Plaintiff couldn't handle the Plaintiff's job duties. The Plaintiff mentioned that Carolyn was acting in that manner to the ADA. the Plaintiff was then told by the ADA Department, that when they hear discrimination and harassment, they are obligated to connect the Plaintiff with the EOCO department to file a claim.

60. The Plaintiff filed and the EOCO Department never responded, neither did the HR department. On August 27th, the Plaintiff left the department and went to Nicholson STEM Academy Elementary School. the Plaintiff was still a CPS employee, however, Carolyn acted as if the Plaintiff wasn't. She called the Plaintiff's new administration/bosses from Nicholson and railroaded the Plaintiff. Carolyn did this by more lying, embellishing the truth, etc., by making it seem as if the Plaintiff was stealing a laptop a laptop that was assigned to the Plaintiff from the IT Department at CPS. Carolyn and the Plaintiff had a discussion verbally and via email about the Plaintiff returning the laptop. We agreed on the date of the return and who the Plaintiff would return it to.

61. After our agreement, Carolyn then sent an email to the Plaintiff's Principal Dr. Judith Gibbs prior to Carolyn Calling her to lie to the Plaintiff's boss. She told her that the Plaintiff was completely unresponsive, that the Plaintiff couldn't keep the laptop, etc. She said that the laptop belonged to the CTE Department and that it's against the rules for the Plaintiff to keep while still being employed by CPS. She did this only to railroad the Plaintiff and to completely make the Plaintiff look bad, incompetent, a thief, etc. The Plaintiff replied to her lying email with screenshots, etc. proving that we had communicated about returning the laptop and who the laptop would be return to. The Plaintiff copied several people on the email including Christina Jordan, members form the EOCO, department etc. No one did anything about it.

62. The Plaintiffs Teammate David Blackmon also left the CTE department about a month or two prior to the Plaintiff to go to another department within CPS. He took his laptop with him as well. He still has it after a year. Carolyn did not reach out to him, his boss or IT department for his laptop to railroad him. None of the Plaintiffs teammates went through any of this, the Plaintiff was treated differently.

63. The most recent incidents that the Plaintiff has experienced has been not only not being given a fair chance for employment but also, the Plaintiff has been contacted on 3 - 4 times from outside consulting firms recruiting for Chicago Public Schools.

64. They have recognized the Plaintiff's credentials, experience, qualifications, etc. They all but guaranteed that the Plaintiff would get an interview. At least one of the roles was directly connected to the IT Department, STEM High Schools, etc. The Plaintiff knew that he wouldn't even get an interview when the Plaintiff was told what department it was in. Not to the Plaintiff's surprise, the Plaintiff the Plaintiff didn't get an interview. However, the recruiters from the firm were very shocked that the Plaintiff hadn't received an interview.

65. The Plaintiff wants his character assassination to stop, his reputation back, his PIPs destroyed, Alan, Carolyn, Rita, Troy, Christina Jordan, Allie Parker, Shadia Daniels, etc. to be exposed, reprimanded, and punished for the railroading, lying, producing fake documents, the Plaintiff not being able to get hired by another department, etc. within Chicago Public.

66. Troy Wiliams maliciously attempted to implement Apple's Curriculum into the CPS by using Perkins Funding mandated by the Illinois State Board of Education (ISBE) by use of equipment that was paid for by these federal funds need to be exposed as well. Lastly, the Career and Technical Education Department to be exposed to the Illinois State Board of Education for bending the rules with our Federal funding to protect principals, friends of principals, etc. hiring teachers that aren't qualified, not vetting teachers experience to become CTE Teachers but still receiving licenses needs to be exposed as well.

67. One of Carolyn's victims of racism and bullying is the very famous and very generous donor to Chicago Public Schools, Chance the Rapper. She was his assistant principal at Jones College Prep. H.S. He became famous after making a song to respond to her bullying, racist, bullying harassing, and discriminatory behavior, etc. and mentioning her by name. The link to his song is https://www.youtube.com/watch?v=DsQm_6I37ek. As of February 20, 2021, there were 980,000 views. He names Carolyn Jourdan by her maiden name at the time when she was the Assistant Principle at Jones College Prep. High School. Please listen for the name, Ms. Rownd or Ms. Rowndy.

68. Relief: The Plaintiff is requesting compensation for the years that suffered at the hands of Carolyn Jourdan, Rita Raichoudari, Alan Mather, and all parties involved from CPS. The Plaintiff is also seeking relief compensation for pain and suffering, loss of wages and emotional distress and defamation of character. The Plaintiff wants his Human Resources and disciplinary records wiped clean of all the fictitious claims that Carolyn Jourdan, Rita and other CPS Parties fictitiously and maliciously committed. All parties involved need to be fired and not allowed to work around children. They also need to be placed on the do not hire list of CPS.

69. In 2021, the Plaintiff is still suffering from the 'blacklist' that he's on within the Chicago Public School District. He is continuing with his journey to assist Black and African American have a level playing field in Computer Science and Technology. He's employed with an international firm that is dedicated to this cause. A fictious obstacle has been placed in his way of bringing this free program that empowers teachers in Computer Science / Technology and partners teachers with an industry professional volunteers that also wants to assist these children.