**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| HAROON ARRASHEED, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19-cv-7614 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| BOARD OF EDUCATION OF THE | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This case involves a discrimination claim by a former employee of the Chicago Public

Schools, who left his position in the middle of a performance-improvement plan. Plaintiff

Haroon Arrasheed was placed on a performance-improvement plan when he neglected to plan a

year-end event for students in a timely manner. Arrasheed then requested a few

accommodations under the American with Disabilities Act ("ADA"), and the Chicago Public

Schools granted his requests.

Arrasheed did not complete the performance-improvement plan. He voluntarily

transferred to a different position with the Chicago Public Schools, so his performance-

improvement plan was called off. He worked in that position for the next seven months before

he left the Chicago Public Schools to work for a private employer.

Arrasheed later sued the Chicago Public Schools, through its Board of Education,[1]

alleging discrimination, harassment, and failure to accommodate his disability-related requests.

---

[1] The Court substitutes the Board of Education of the City of Chicago as the Defendant because the Chicago Public Schools is not a suable entity under state law. *See* 105 ILCS 5/34-2; *Burton v. Chicago Pub. Schs.*, 2017 WL 11540586, at *1 n.1 (N.D. Ill. 2017) (St. Eve, J.); *see also* Def.'s Answer to Pl.'s Am. Cplt., at 1 (Dckt. No. 53). The Clerk of Court is directed to make this substitution on the docket.

He claims that the Board constructively terminated him and harassed him on the basis of his race, religion, color, national origin, and disability. He also alleges that it failed to accommodate his disability-related accommodation requests. He brings claims under Title VII of the Civil Rights Act of 1964, the ADA, 42 U.S.C. § 1983, and 42 U.S.C. § 1981. After discovery, the Board moved for summary judgment.

For the following reasons, the motion for summary judgment is granted.

## Procedural Background

Before diving into the facts, the Court begins with a few wrinkles. The punchline is that there is no genuine issue of material fact for a simple reason. The Board cited evidence to support its statement of facts. But despite multiple opportunities, Arrasheed rarely cited evidence when responding to the motion and disputing the Board's asserted facts. On most issues, only one side of the scale contains any evidence, so it tips decisively in the Board's favor.

Taking a step back, this Court set a briefing schedule for dispositive motions and responses. *See* 5/18/22 Order (Dckt. No. 91). The Board met the deadline and filed its motion for summary judgment on June 6, 2022. *See* Def.'s Mtn. for Summ. J. (Dckt. No. 93). The Board also filed a Local Rule 56.1 statement of undisputed material facts that included specific citations to evidence. *See* Def.'s Statement of Undisputed Material Facts in Support of Mtn. for Summ. J. (Dckt. No. 94).

Arrasheed's response to the Board's summary judgment motion was due by June 27, 2022. *Id.* On June 11, Arrasheed filed a motion for a 30-day extension, which this Court granted (running from the day of the request). *See* Pl.'s Mtn. for Extension of Time (Dckt. No. 96); 6/22/22 Order (Dckt. No. 97). This Court pushed back the deadline and reset it for July 15. *See* 6/22/22 Order (Dckt. No. 97).

Arrasheed did not meet that deadline. Instead, he filed three documents on July 14. He filed a document called a "complaint," which this Court construed as a request for more time. Arrasheed requested 90 more days, explaining that he wanted this Court to "consider a motion for representation along with an Application of leave to Proceed In Forma Pauperis." *See* Complaint (Dckt. No. 98). He added that the Hibbler Help Desk for pro se litigants had extended the waiting period for appointments, and that he was "unable to receive a second appointment" before the deadline. *Id.* Arrasheed also included an application to proceed *in forma pauperis* (Dckt. No. 99), and a request for the appointment of counsel (Dckt. No. 100).

This Court denied all three requests. *See* 8/1/22 Order (Dckt. No. 102). The Court pointed to the fact that it already gave Arrasheed more time when it granted his request for a one-month extension. *Id.* "Defendant filed a motion for summary judgment on June 6, 2022, nearly two months ago, so Plaintiff has had enough time to respond." *Id.*

The age of the case – it was filed in 2019 – factored into the analysis, too. *Id.* So did the history of extensions in the case. Cases need to move along, and deadlines need to mean something. Otherwise, cases drag on, the docket piles up, and justice is delayed for everyone.

This Court denied Arrasheed's application to proceed *in forma pauperis* because he had already paid the filing fee. *Id.* And this Court denied the request for the appointment of counsel, too. Arrasheed is an educated, sophisticated litigant – a former employee of the Chicago Public Schools with a post-graduate education. *Id.* The case is not overly complex, either.

Time passed, and Arrasheed did not respond to the motion for summary judgment. Again, his deadline to respond was July 15. Instead, on August 9, Arrasheed requested leave for more time due to illness and attached a doctor's note dated July 1, 2022. *See* Pl.'s Request for Leave (Dckt. No. 103). The note stated that Arrasheed's (unspecified) health condition had

"worsened recently," and the doctor recommended that he not start employment until September 1. *Id.* at 2.

This Court denied Arrasheed's request for more time because "the deadline for Plaintiff to respond ha[d] long since passed" before he requested additional time. *See* 8/11/22 Order (Dckt. No. 104). "Ordinarily, this Court would not bat an eye at giving someone more time to complete a filing due to a medical condition." *Id.* But here, the request for more time "lack[ed] specifics" about Arrasheed's condition or how much time he needed to respond to the Board's motion. *Id.* The request wasn't particularly timely, either. Arrasheed did not mention the medical situation until nearly a month after the deadline.

The Court started digging into the materials to make its ruling, before it noticed something. The docket did not include any reference to the notice required for pro se litigants under the Local Rules. Because Arrasheed is pro se, Local Rule 56.2 requires that the Board send him a notice describing the summary judgment procedure. The Rule states that "[a]ny party moving for summary judgment against an unrepresented party shall serve the unrepresented party with its summary judgment papers and a copy of Federal Rule of Civil Procedure 56, Local Rule 56.1, and this Local Rule 56.2 Notice. The moving party must also file this Local Rule 56.2 Notice, with a certificate of service." *See* L.R. 56.2.

The Court did not see that the Board had filed a Local Rule 56.2 Notice on the docket. So, it held a hearing on October 27, 2022, to determine whether the Board "sent Plaintiff a Local Rule 56.2 statement about the requirements for responding to a motion for summary judgment." *See* 10/27/22 Order (Dckt. No. 111). Defense counsel indicated at the hearing that she believed Arrasheed had been sent the Rule 56.2 Notice, but wanted a chance to confirm. Arrasheed stated that he never received the notice.

4

In a later filing, the Board informed the Court that "[u]pon further internal investigation, Defendant Board cannot confirm whether it sent notice to Plaintiff explaining the summary judgment procedure" as required by the Local Rules. *See* Def.'s Decl. Relating to L.R. 56.2 (Dckt. No. 109).

At first, this Court was unsure if Arrasheed suffered any prejudice from the lack of a Rule 56.2 notice. After all, during the status hearing on October 27, Arrasheed "confirmed that he had visited the Hibbler Help Desk three times in connection with the motion for summary judgment." *See* 11/1/22 Order (Dckt. No. 112).

But after the hearing, Arrasheed notified the Court that he "reviewed Local Rule 56.2 for the first time" after the October 27 hearing, and he requested "another opportunity to respond properly to the Defense's Summary Judgement." *See* Pl.'s Mtn. for Opportunity to Respond (Dckt. No. 110). He represented that when he "met with the Hibbler Help Desk, Local Rule 56.2 was not a topic of discussion." *Id.*

In the end, the Court gave Arrasheed yet another chance. Given that the Board did not comply with Local Rule 56.2, this Court gave Arrasheed one final chance to respond to the motion for summary judgment. *See* 11/1/22 Order (Dckt. No. 112).

Again, at some level, the Board's failure to send Arrasheed the Rule 56.2 notice seemed "harmless" because "[t]his Court highlighted the need to follow the Local Rules in its Order on May 18, 2022 [setting a briefing schedule], and this Court expressly pointed to Local Rule 56.1." *Id.* And "Plaintiff already received an extension of time" but "despite receiving that extension, Plaintiff filed nothing." *Id.* "Plaintiff knew about the deadline, but yet filed nothing, so the failure to know the nuances of the Local Rules does not seem to be the primary issue." *Id.* But there was no harm in giving him another chance, either.

Nevertheless, the Court saw no harm in giving Arrasheed one last chance to respond to the motion for summary judgment. *Id.* It directed defense counsel to send him a copy of the notices required by Local Rule 56.2 and file that notice on the docket. *Id.* She did so. *See* Def.'s L.R. 56.2 Notice (Dckt. No. 113); Def.'s Certificate of Service (Dckt. No. 114). The Court also set a response deadline of November 18 and directed Arrasheed to file a notice with the Court by November 8 if he had any issues making an appointment with the Hibbler Help Desk. *See* 11/1/22 Order (Dckt. No. 112).

Arrasheed later informed the Court that he was unable to make an appointment with the Hibbler Help Desk until November 21, which would be three days after his deadline to respond. *See* Pl.'s Mtn. for Legal Assistance (Dckt. No. 115). So, the Court yet again extended his deadline to respond, resetting the deadline for December 1. *See* 11/8/22 Order (Dckt. No. 116). After continued extensions and delays from the original June 27 deadline, the Court made clear that "[t]his extension is the last." *Id.*

On December 2, Arrasheed finally responded to the Board's motion for summary judgment. He filed both a memorandum in opposition to the Board's motion and a response to the Board's Local Rule 56.1(a) statement of undisputed material facts. *See* Pl.'s Resp. to Def.'s Mtn. for Summ. J. (Dckt. No. 117); Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts in Support of Mtn. for Summ. J. (Dckt. No. 118).

Arrasheed's memorandum in opposition to the Board's motion is bulky. It contains six pages of argument, but nearly 600 pages of exhibits and other materials. *See* Pl.'s Resp. to Def.'s Mtn. for Summ. J. (Dckt. No. 117). The lengthy set of documents appears to be evidence that Arrasheed intends to use to respond to the motion.

6

However, these documents almost never make their way into Arrasheed's response to the Board's Rule 56.1 statement of material facts. Attaching a cinder block of exhibits isn't enough to create an issue of fact. Under Local Rule 56.1(e)(3), "[t]o dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." *See* L.R. 56.1(e)(3); *see also Washington v. McDonough*, 2021 WL 1962420, at *3 (N.D. Ill. 2021) (applying Local Rule 56.1(e)(3) and deeming the uncontroverted facts admitted).

Local Rule 56.1(e)(3) builds on Rule 56(e) of the Federal Rules of Civil Procedure. Under Rule 56(e), "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion," or it may "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." *See* Fed. R. Civ. P. 56(e).

Put simply, if a litigant wants to dispute an asserted fact, the litigant must back it up with evidence. A raw denial doesn't cut it. A narrative response without supporting evidence does not suffice. Attaching a large collection of documents, without more, does not satisfy the Local Rules, either.

And that is where Arrasheed's response falls short. He responds to the Board's statement of facts with free-form text that frequently lacks specific citations to evidence. *See, e.g.*, Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts in Support of Mtn. for Summ. J., at ¶¶ 4–5, 23, 30–33, 36–51, 53, 57–62, 64, 67 (Dckt. No. 118).

When Arrasheed does cite to specific evidence to dispute the Board's asserted facts, it is almost always to the "Declaration of Haroon Arrasheed." *See, e.g.*, *id.* at ¶¶ 16–17, 19–22, 27–29, 34–35. But it doesn't appear that Arrasheed ever included this declaration with his filings. He did attach a four-page, 21-paragraph "Declaration of Capstone Haroon Arrasheed" to his memorandum in response to the Board's motion. *See* Pl.'s Resp. to Def.'s Mtn. for Summ. J., at 306–09 (Dckt. No. 117). But that declaration does not appear to match the citations. Not even close.

The subject matter of the attached declaration is narrow. The document states that "[t]he purpose of this declaration is to show an example of the disaster and chaos that ensued at the 2018 Office of College Career and Success at Chicago Public Schools All Staff high profile Quarterly Meeting." *Id.* at 306, ¶ 2. The declaration then goes on to describe this event in detail, including by noting that it "was an extremely hot and humid day," that a missing "microphone couldn't be found in a timely manner," and that an announcement about improperly parked cars lead to "a chaotic scene." *Id.* at 307–08, ¶¶ 8, 10, 13.

However, it is quickly apparent that Arrasheed's declaration about the quarterly meeting is *not* the declaration cited in his response to the Rule 56.1 statement. He is citing to a declaration that isn't in the record.

For example, Arrasheed cites paragraphs 124 and 156 of the "Declaration of Haroon Arrasheed" to support the assertion that "CTE Capstones are not mandatory events." *See* Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts in Support of Mtn. for Summ. J., at ¶ 16 (Dckt. No. 118). But the declaration attached to Arrasheed's memorandum has only 21 paragraphs. It doesn't have paragraphs 124 or 156. And more importantly, nowhere does the attached declaration mention that the CTE Capstone was a nonmandatory event. Instead,

Arrasheed appears to insinuate that his supervisors planned a quarterly meeting that was more disorganized than the Capstone event he planned. *See* Pl.'s Resp. to Def.'s Mtn. for Summ. J., at 306–07, ¶¶ 2, 14 (Dckt. No. 117).

In fact, the quarterly meeting discussed in detail in Arrasheed's declaration isn't mentioned at all in the Board's Rule 56.1 statement of undisputed facts. *See* Def.'s Statement of Undisputed Material Facts in Support of Mtn. for Summ. J. (Dckt. No. 94). So, it is not clear which of the Board's asserted facts would be disputed by the attached declaration.

That said, Arrasheed does occasionally cite to evidence in the record to support his assertions of fact. For example, he twice cites to the Declaration of Rashaan Meador, one of his coworkers. *See* Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts in Support of Mtn. for Summ. J., at ¶¶ 17, 19 (Dckt. No. 118). Meador's declaration is attached to Arrasheed's response. *See* Pl.'s Resp. to Def.'s Mtn. for Summ. J., at 301–04 (Dckt. No. 117). When Arrasheed disputes an asserted fact with a specific citation to evidence consistent with Rule 56.1(e)(3), the Court will consider the cited evidence.

To sum up, this Court gave Arrasheed extension after extension, and chance after chance, to respond to the Board's Rule 56.1 statement of undisputed facts. But in the end, Arrasheed fell short. For most of the Board's factual assertions, Arrasheed either didn't cite to evidence, or he cited to a declaration that was not included in his filings.

The upshot is that most of the Board's factual assertions are deemed admitted. The Board offered admissible evidence to support its proffered facts. By and large, Arrasheed did not respond with evidence of his own. As a result, the Court will accept most of the Board's asserted facts as true. *See* L.R. 56.1(e)(3) ("Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material.").

With that stage set, the Court turns to the facts of this case.

## Factual Background

### I.    Arrasheed's Employment in the Career Technical Education Group

This case is about Haroon Arrasheed's employment dispute with his former employer, the Chicago Public Schools. Arrasheed is Black man of Muslim faith. *See* Def.'s Statement of Undisputed Material Facts in Support of Mtn. for Summ. J., at ¶ 1 (Dckt. No. 94). From July 11, 2016, to August 27, 2018, he was employed by the Board as a Senior Program Coordinator in the Board's Career Technical Education Group. *Id.* at ¶¶ 3, 11–12. The Career Technical Education Group was housed within the Early College and Career Education Department. *Id.* at ¶¶ 11–12.

Carolyn Jourdan was employed as the manager of the Career Technical Education Group and was Arrasheed's direct supervisor. *Id.* at ¶¶ 12–13. Jourdan, in turn, reported to Rituparna Raichoudhuri, the Executive Director of the Board's Early College and Career Education Department. *Id.* at ¶ 14.

Arrasheed's job responsibilities focused on information technology curriculum. *Id.* at ¶ 15. He "oversaw implementation, maintenance and evaluation of high school [Career Technical Education] programs in areas of information technology," served as an expert in IT curriculum and instruction, and supported teachers who were preparing students for further study or employment in IT. *Id.* Arrasheed also planned district-wide events including Capstone events and college and career fairs. *Id.* at ¶ 16.

One of these events forms the crux of this dispute: the district-wide Capstone event for all students in the Career and Technical Education IT programs during the 2017–2018 school year. *Id.* at ¶ 17. The yearly Capstone events typically included a planned competition for

students, complete with judges and speakers from the community. *Id.* The Board viewed the Capstone as a "high profile" event that "requires extensive and long-term planning." *Id.*

Arrasheed was tasked with planning the Capstone event for the end of the school year in 2018.[2] By late 2017 or early 2018, the Board expected that Arrasheed "should have had a venue, host and project decided on and additional details in process like determining the number of participating schools, contacting transportation companies, securing catering vendors, and reaching out to and securing speakers and judges." *Id.* at ¶ 19.

From the get-go, Arrasheed didn't do much to plan the event. He attended a preliminary planning meeting on October 30, 2017. *Id.* at ¶ 20. And he responded to emails from colleagues in late November and early December 2017, giving his preliminary ideas for the event. *Id.* at ¶ 21. But he didn't respond to more specific follow-up questions that colleagues sent him by email in December. *Id.* at ¶¶ 22–23.

By late January 2018, Arrasheed had booked a tentative date and location for the Capstone event: May 11, 2018, at the Motorola Mobility Foundation, the host of the 2017 event. *Id.* at ¶¶ 24–25. He then sent around a "save the date" to his colleagues. *Id.* at ¶ 27.

But after that point, Arrasheed seems to have ignored planning the event almost entirely. He didn't follow-up with Motorola confirming that it could serve as a host until April 4. *Id.* at ¶¶ 28–29. He didn't respond to an April 10 email asking about the status of the Capstone event.

---

[2] Arrasheed asserts in his response to the Board's Rule 56.1 statement that "[t]he Capstone Event is not mandatory." *See* Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts in Support of Mtn. for Summ. J., at ¶ 17 (Dckt. No. 118). Here, Arrasheed supports this assertion with a citation to the record. Rashaan Meador's declaration states that the Capstone is not mandatory, at least *for teachers*. *See* Pl.'s Resp. to Def.'s Mtn. for Summ. J., at 302, ¶ 17 (Dckt. No. 117) ("The CTE Capstone is not a mandatory event. . . . We can't force our teachers to participate in our Capstone but it's highly encouraged that they do participate."). Arrasheed acknowledges in his response to the Board's motion for summary judgment that his "primary responsibility was planning the annual high school senior Capstone." *Id.* at 2. So, the Court doesn't find that Arrasheed is disputing that the Capstone was a mandatory event *for him* to plan.

And he had not shared any written or substantive plans for the event with Jourdan by this point. *Id.* at ¶¶ 22–23.

On April 11 – one month before the Capstone event – Arrasheed emailed Jourdan to say that he "didn't have much bandwidth for planning, execution etc." to work on an in-person event. *Id.* at ¶ 32. He claimed that Motorola had not been "as responsive for this year's event" as they were the prior year. *Id.* So, he proposed hosting a virtual event in place of the May 11 event at Motorola (and, of course, the 2018 event took place before the COVID-19 pandemic). *Id.*

Jourdan's response to the proposed virtual event was tepid. She said that she would "consider making the event virtual but did not think it would be approved by [Raichoudhuri] and above." *Id.* at ¶ 34. And she "was also concerned about the timing and that it had taken him so long to raise the lack of support and responsiveness to her." *Id.*

Jourdan followed-up with Arrasheed the next day. As she had suspected, Raichoudhuri did not see a purely virtual Capstone event as an option. *Id.* at ¶ 36. So, Jourdan requested that Arrasheed submit an "IT Capstone Plan" by close of business the following Monday, April 16 that set a timeline, identified relevant partnerships, created a budget, and proposed steps for implementation. *Id.* at ¶ 37.

Arrasheed missed the deadline by a few hours, submitting his Capstone plan after 10 p.m. on April 16. *Id.* at ¶ 39. On the substance, Jourdan viewed Arrasheed's submission as "severely lacking in content" because it had only "very basic information and no specific details and appeared to be cut and pasted from somewhere and/or that someone else had drafted the contents." *Id.*

So, two days later, on April 18, Jourdan placed Arrasheed on a Performance Improvement Plan ("PIP") that required him to meet weekly with Jourdan and provide her

regular updates. *Id.* at ¶¶ 40–41. Arrasheed was also required to meet with Jourdan for 30-day and 60-day follow-up meetings to discuss his performance. The PIP would conclude after the 60-day follow-up meeting, and Arrasheed would either pass or fail. *Id.* at ¶¶ 40, 44, 50. His compensation and benefits were unchanged after being placed on the PIP. *Id.* at ¶ 42.

On May 10, while the PIP was ongoing, Arrasheed submitted a request for reasonable accommodations under the ADA. *Id.* at ¶¶ 55–56. Arrasheed requested two accommodations: (1) more time to complete deadlines; and (2) the ability to use conference rooms when he needed to concentrate without interruption. *Id.* at ¶¶ 56, 58.

On July 9, the Board largely granted Arrasheed's request. He was allowed use of conference rooms and given 48-hour extensions for some deadlines on a temporary, trial basis for the next 30 days. *Id.* at ¶ 58. Jourdan was to work with Arrasheed to determine which deadlines could be extended, as external deadlines were harder to extend. *Id.* The 30-day trial could be extended if needed. *Id.* However, Jourdan never recalled Arrasheed asking for an extension. *Id.* at ¶ 59.

On July 25, Arrasheed and Jourdan met for the PIP's 30-day follow-up meeting. She continued to notice performance issues. Specifically, Arrasheed's work on the Capstone event was "missing a significant amount of detail, including specifics around who was responsible for specific aspects of the day, including audio-visual, security, registration, judges, and volunteers. Plaintiff also waited until the day before the event to get an accurate run of the show." *Id.* at ¶ 46. Arrasheed had also failed to plan future events and had missed multiple deadlines. *Id.* at ¶¶ 47–48.

II.      **Arrasheed's Transfer and Departure from the Chicago Public Schools**

On August 23, while the PIP was still in progress, and before the final 60-day meeting, Arrasheed interviewed for a teaching position at Lillian R. Nicholson STEM school within the Chicago Public Schools. *Id.* at ¶ 61. He accepted the position and transferred out of the Career Technical Education Group on August 27. *Id.* at ¶ 62.

Jourdan did not ask Arrasheed to transfer, and she played no role in the transfer process. *Id.* She didn't supervise him in his new role. *Id.* at ¶ 65. In fact, she never saw Arrasheed again after August 27. *Id.* at ¶ 64. Her final contact with him came when she emailed him on September 12 about the return of files related to his old job. *Id.* They haven't spoken since. Because of Arrasheed's transfer, the two never met for the PIP's final 60-day follow-up. So, Arrasheed neither passed nor failed the PIP. It just wasn't completed. *Id.* at ¶¶ 50–52.

At this point, the record evidence falls off until March 18, 2019, when Arrasheed resigned his new position at the Nicholson STEM school to accept an external position at Cognixia. *Id.* at ¶ 66. Arrasheed worked at Cognixia from only June to July 2020. *Id.* The record is silent on Arrasheed's time at Nicholson STEM school.

On August 14, 2019, Arrasheed filed a charge against the Board with the Equal Employment Opportunity Commission ("EEOC") which he cross-filed with the Illinois Department of Human Rights. *Id.* at ¶ 67. He claimed that he was discriminated against because of his race, religion, and disability, and that he was retaliated against for participating in protected activity. *Id.* The EEOC dismissed the case on August 19 and gave him notice of his right to sue. *Id.* at ¶ 68.

On November 18, 2019, Arrasheed sued the Board. *See* Cplt. (Dckt. No. 1). He later filed an amended complaint clarifying that he was raising a host of claims. His complaint brings

14

the following claims: (1) discrimination based on race, religion, color, and national origin under Title VII of the Civil Rights Act of 1964; (2) harassment based on race, religion, color, and national origin under Title VII; (3) discrimination under the ADA; (4) harassment under the ADA; (5) failure to accommodate under the ADA; (6) violations of the Equal Protection Clause under 42 U.S.C. § 1983; and (7) discrimination based on race, color, and national origin under 42 U.S.C. § 1981.[3] *See* Am. Cplt., at 5–6 (Dckt. No. 57).

The Board then moved for summary judgment. *See* Def.'s Mtn. for Summ. J. (Dckt. No. 93). After a series of delays and extensions, that motion is now before the Court.

### Legal Standard

A district court "shall grant" summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 851 (7th Cir. 2005) (quotation marks omitted). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp.*

---

[3] Arrasheed's amended complaint uses the District's form for complaints alleging employment discrimination. *See* Am. Cplt., at 3–8 (Dckt. No. 57). The amended complaint's allegations are not broken out into counts. Instead, he checked a number of boxes in response to a question on the form. *Id.* at 3–4. Even so, the Court reads the amended complaint to bring seven claims against the Board. *Id.* at ¶ 9.

*v. Catrett*, 477 U.S. 317, 323 (1986). To survive summary judgment, the opposing party must go beyond the pleadings and identify specific facts showing the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

The Court construes all facts in the light most favorable to the nonmoving party, giving him the benefit of all reasonable inferences. *See Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016). The Court does not weigh the evidence, judge credibility, or determine the truth of the matter, but rather determines only whether a genuine issue of triable fact exists. *See Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). Summary judgment is appropriate if, on the evidence provided, no reasonable jury could return a verdict in favor of the non-movant. *See Celotex Corp.*, 477 U.S. at 322; *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).

Additionally, a nonmovant's "failure to comply with Local Rule 56.1 . . . does not . . . automatically result in judgment for the movant. [The movant] must still demonstrate that [he] is entitled to judgment as a matter of law." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) (quotation marks and citation omitted).

## Analysis

Arrasheed brings claims under Title VII for discrimination and harassment based on race, religion, color, and national origin. He also brings discrimination, harassment, and failure-to-accommodate claims under the ADA. The Court will first address these claims because claims under both statutes are subject to the same filing deadline. Next, the Court will address Arrasheed's claim under 42 U.S.C. § 1983 based on a violation of the Equal Protection Clause. Finally, the Court will address Arrasheed's claim of discrimination based on 42 U.S.C. § 1981.

## I.      Title VII and ADA Claims

The Court starts with the Title VII and ADA claims because they face a common issue: untimeliness.  Above and beyond the timeliness problem, the claims fail on the merits, too. Arrasheed came to the courthouse with too little, and he came to the EEOC too late.

### A.      Untimeliness

Under both statutes, a plaintiff must file a charge with the EEOC before filing suit in federal court.  *See Fort Bend County v. Davis*, 139 S. Ct. 1843, 1846 (2019) (Title VII); *Carlson v. Christian Bros. Servs.*, 840 F.3d 466, 467 (7th Cir. 2016) (ADA).  Both statutes set the same deadline.  The complainant "has 300 days from the alleged discriminatory or retaliatory act to file a timely charge of discrimination with the EEOC."  *See Chatman v. Bd. of Educ.*, 5 F.4th 738, 744 (7th Cir. 2021); *see also Carlson*, 840 F.3d at 467.[4]

Failure to file a timely EEOC charge is an affirmative defense to a later filed lawsuit. *Chatman*, 5 F.4th at 744.  "At summary judgment, a defendant who asserts this affirmative defense must show that there is no genuine dispute of material fact as to whether the plaintiff timely filed with the EEOC."  *Id.*  The defendant can make this showing "by pointing to evidence that affirmatively shows that the plaintiff failed to timely file."  *Id.*

The ticking clock is fatal to Arrasheed's Title VII and ADA claims.  He filed his charge of discrimination with the EEOC on August 14, 2019.  The Board has affirmatively pointed to evidence – Arrasheed's EEOC charge – showing that he filed on August 14.  *See* Def.'s Statement of Undisputed Material Facts in Support of Mtn. for Summ. J., at ¶ 67 (Dckt. No. 94).

---

[4]  Under the statutes, this filing deadline is 300 days, not 180 days, because Illinois has a state agency – the Illinois Department of Human Rights – that is empowered to grant relief.  *See Davis*, 139 S. Ct. at 1846; *Chatman*, 5 F.4th at 744.

Looking backward 300 days, Arrasheed could complain about discrimination or harassment under Title VII or the ADA, or a failure to accommodate under the ADA, that occurred on or after October 18, 2018. So October 18, 2018 is the dividing line. Any conduct before October 18, 2018 took place more than 300 days before Arrasheed went to the EEOC.

The conduct at issue here is on the wrong side of the line. By October 18, 2018, Arrasheed had already transferred to Nicholson STEM school. He left his job as a Senior Program Coordinator in the Career Technical Education group on August 27, 2018. He had already transferred out of the Early College and Career Education Department. He was no longer being supervised by Jourdan or Raichoudhuri, and was no longer subject to a PIP.

Moreover, Arrasheed's last communication with Jourdan *at all* occurred on September 12, 2018. That date is outside the window of a timely EEOC charge, too. There is nothing else in the record after October 18, 2018 that could give rise to a claim. In fact, the record is a blank slate until March 19, 2019, when Arrasheed resigned his position with the Chicago Public Schools.

The crux of Arrasheed's allegations is about his PIP, his lack of accommodations, and his transfer. He claims that (1) he was discriminated against and harassed by being placed on a PIP; (2) the Board failed to reasonably accommodate his disability; and (3) his transfer to Nicholson was based on discrimination and harassment. All of those events are outside the statutory limitations period because they took place before October 18, 2018.

Arrasheed's response to the motion for summary judgment does not mention the filing deadline at all. *See* Pl.'s Resp. to Def.'s Mtn. for Summ. J., at 1–6 (Dckt. No. 117). In fact, he seems to ignore that the affirmative defense exists. Arrasheed's failure to support his claim with evidence of conduct during the limitations period dooms his claims. *See Chatman*, 5 F.4th at

745 (holding that the defendant had "met its burden on the affirmative defense by pointing to the absence of anything in the record regarding [plaintiff's interactions with the alleged discriminator] within the statute of limitations period").

From a timeliness perspective, Arrasheed's only potential claim is a claim that he was "constructively discharged" in March 2019 when he resigned his position at Nicholson STEM school to take a position at Cognixia. Even so, that claim doesn't go anywhere.

For starters, it does not appear that Arrasheed is even arguing that he was constructively discharged in March 2019, when he left the Chicago Public Schools entirely. It is true that the charge he filed with the EEOC states that he was constructively discharged "[o]n or about March 18, 2019." *See* Am. Cplt., at 9 (Dckt. No. 57). But his amended complaint alleges that "[i]n August 2018, Plaintiff had a constructive discharge as a Sr. Career and Technical Education (CTE) for Information Technology from the Central Office of Chicago Public Schools." *Id.* at 16, ¶ 17. The amended complaint doesn't mention being discharged in March 2019, and doesn't discuss his job or his supervisors at Nicholson STEM school at all. *See id.* at 15–26.

In his response to the motion for summary judgment, Arrasheed again mentions only his transfer to Nicholson when arguing that he was constructively discharged. He asserts that he "was constructively discharged from his role as Senior CTE IT Program Manager and took a lower paying position at Nicholson STEM Academy." *See* Pl.'s Resp. to Def.'s Mtn. for Summ. J., at 3 (Dckt. No. 117).

Moreover, the only evidence in the record shows that Arrasheed voluntarily left his position with the Chicago Public Schools to take a job at Cognixia. *See* Def.'s Statement of Undisputed Material Facts in Support of Mtn. for Summ. J., at ¶ 66 (Dckt. No. 94). There's simply nothing in the record showing that Arrasheed's decision to leave Nicholson and work for

Cognixia in March 2019 was related to the conduct that occurred in April to August 2018 while he was a Senior Program Coordinator.

In sum, all of the alleged conduct took place more than 300 days before he filed a charge with the EEOC, so his Title VII and ADA claims (Counts I–V) are untimely. The Board is entitled to summary judgment on these claims.

### B.    The Merits

Untimeliness is reason enough to grant the Board's motion for summary judgment. But the Title VII and ADA claims fail on the merits, too. So, the Court will briefly discuss why Arrasheed has not presented sufficient evidence to survive summary judgment on these claims.

The Court begins with the discrimination claims, brought under both Title VII and the ADA. Arrasheed argues that he was discriminated against when Jourdan placed him on the PIP. *See* Pl.'s Resp. to Def.'s Mtn. for Summ. J., at 4 (Dckt. No. 117). Arrasheed's Title VII claims allege discrimination based on his race, religion, color, and national origin. His ADA claim alleges discrimination based on disability.

A plaintiff sets out a prima facie case of discrimination if she can show that: "(1) she is a member of a protected class; (2) she was meeting her employer's legitimate expectations; (3) she was subject to an adverse employment action; and (4) similarly situated employees who were not members of the protected class were treated more favorably." *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 880 (7th Cir. 2016) (Title VII); *see also Brooks v. Avancez*, 39 F.4th 424, 434 (7th Cir. 2022) (ADA). "Only when the plaintiff has established this prima facie case does the burden shift to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit

evidence that the employer's explanation is pretextual." *Simpson v. Franciscan All., Inc.*, 827 F.3d 656, 661 (7th Cir. 2016) (quotation marks omitted); *see also Brooks*, 39 F.4th at 434.

Under this framework, Arrasheed cannot make out a prima facie case of discrimination under either Title VII or the ADA. Even assuming that Arrasheed was disabled – a point that the Board disputes – he cannot satisfy step two: he has not shown that he was meeting the Board's legitimate employment expectations.

The record is chock full of instances where Arrasheed failed to meet deadlines, failed to plan events, and failed to communicate with colleagues. Most notably, Arrasheed failed to plan the Capstone event and emailed Jourdan proposing to hold a virtual event only one month before the scheduled date. *See* Def.'s Statement of Undisputed Material Facts in Support of Mtn. for Summ. J., at ¶¶ 32–34 (Dckt. No. 94). After Jourdan told Arrasheed that a virtual event would not be possible and asked for follow-up work, Arrasheed didn't meet the deadline and ultimately submitted work product that was "severely lacking in content" and had only "very basic information and no specific details." *Id.* at ¶ 39.

This record of poor performance is enough to grant summary judgment for Defendant. *See Smith v. Illinois Dep't of Transp.*, 936 F.3d 554, 560 (7th Cir. 2019) ("Given the extensive evidence that Smith was not meeting his employer's legitimate expectations, a reasonable jury could not find that the Department fired him because of his protected activity rather than for his poor performance."). Based on this record, no reasonable jury could conclude that it was anything other than Arrasheed's poor work performance that led to his placement on a PIP.[5] There is no evidence in the record supporting any other explanation.

---

[5] The Court also notes that Arrasheed has not introduced evidence establishing that "similarly situated employees who were not members of the protected class were treated more favorably." *Bagwe*, 811 F.3d at 880 (7th Cir. 2016). So, Arrasheed cannot satisfy step four of the prima facie case, but a failure at step two is sufficient to grant summary judgment to the Board.

Moreover, even if Arrasheed had set out a prima facie case of discrimination, he hasn't presented any evidence that the Board's belief that he was not meeting its legitimate employment expectations was pretextual. The Board's non-discriminatory reason for the adverse action is that Arrasheed was not meeting its legitimate employment expectations. So, Arrasheed needs to show pretext.

"Pretext means more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action." *Smith v. Chicago Transit Auth.*, 806 F.3d 900, 905 (7th Cir. 2015) (quotation marks omitted). At summary judgment, it is the plaintiff's burden "to produce evidence that would allow a reasonable jury to find that [the defendant's] justification was pretextual." *See v. Illinois Gaming Bd.*, 29 F.4th 363, 368 (7th Cir. 2022). As discussed, Arrasheed has not introduced any evidence that would allow him to meet his burden.

Next, Arrasheed's claims of harassment – or hostile work environment – based on Title VII and the ADA also fail on the merits. To succeed, a plaintiff must show that "(1) he was subject to unwelcome harassment; (2) the harassment was based on [a protected characteristic]; (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; (4) there is basis for employer liability." *Huri v. Off. of the Chief Judge of the Circuit Ct. of Cook Cnty.*, 804 F.3d 826, 833–34 (7th Cir. 2015) (Title VII); *see also Ford v. Marion Cnty. Sheriff's Off.*, 942 F.3d 839, 856 (7th Cir. 2019) (ADA). "The conduct alleged must be sufficiently severe or pervasive to alter the conditions of employment." *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 900 (7th Cir. 2018).

Even assuming that Arrasheed suffered unwelcome harassment, there's nothing in the record that shows that any of the Board's actions were based on his protected characteristics – race, color, national origin, religion, or disability. His entire case is based on conjecture.

For example, Arrasheed does not allege – or introduce evidence showing – that any of the Board's employees made derogatory comments toward him about any of his protected characteristics. *See, e.g.*, *Johnson*, 892 F.3d at 901–03; *Patton v. Indianapolis Pub. Sch. Bd.*, 276 F.3d 334, 339 (7th Cir. 2002) ("Patton has presented no evidence to show that [defendants'] treatment of her was based on her race or gender – she argues instead that the 'abusive conduct was purely personal.' This is fatal to her claim."). "As long as the hostility was not based on a protected characteristic, Title VII is not implicated." *Patton*, 276 F.3d at 339. The same is true of the ADA.

Instead, Arrasheed alleges that Jourdan's management of his work itself created a hostile work environment. *See, e.g.*, Am. Cplt., at 16–17, ¶ 20 (Dckt. No. 57) ("At the point, [Raichoudhuri and Jourdan] increased their harassment, bullying, intimidation, and deliberate derailment of essential work that needed to be done. For instance, [Jourdan] started scheduling one on one meetings with Plaintiff sometimes twice per week and started giving him daily fictitious deadlines."). Arrasheed doesn't support these allegations of harassment with record evidence, so they are therefore forfeited. *See Williams v. Bd. of Educ.*, 982 F.3d 495, 508 (7th Cir. 2020).

Without any evidence of harassment based on protected characteristics, Arrasheed's hostile work environment claims fail. That's especially true here when Arrasheed was placed on a PIP before he requested disability accommodations (which were granted). The Board is entitled to summary judgment.

Finally, Arrasheed's failure-to-accommodate claim under the ADA fails for a simple reason. The record evidence shows that the Board *did* accommodate his disability-related requests. "To prevail on a failure to accommodate claim, a plaintiff must prove that (1) he was a

qualified individual with a disability, (2) the [employer] was aware of his disability, and (3) the [employer] failed to reasonably accommodate his disability." *Williams*, 982 F.3d at 503 (alteration in original) (quotation marks omitted).

Even assuming that Arrasheed had a disability that the Board knew about, Arrasheed's claim fails because he *admits* that the Board accommodated his requests. The amended complaint acknowledges that after Arrasheed "sought assistance from the internal ADA (American Disabilities Act) department" at the Board he received "approval of accommodations." *See* Am. Cplt., at 16, ¶ 19 (Dckt. No. 57). He reiterates that admission in his response to the motion for summary judgment. *See* Pl.'s Resp. to Def.'s Mtn. for Summ. J., at 3 (Dckt. No. 117) ("On or about May 10, 2018, Plaintiff applied for *and received* a reasonable accommodation for his ADD and major depression disabilities. *His request was granted on July 9, 2018.*") (emphasis added).

That allegation (and admission) is consistent with the undisputed evidence, which shows that the Board accommodated both of Arrasheed's accommodation requests. It permitted him to work in conference rooms, and it granted him additional time to complete assignments, subject to discussions with Jourdan. *See* Def.'s Statement of Undisputed Material Facts in Support of Mtn. for Summ. J., at ¶¶ 58–59 (Dckt. No. 94). There is no evidence that Arrasheed requested additional accommodations, but never got them.

The evidence shows that Arrasheed never requested any extensions after receiving this accommodation. *Id.* at ¶ 59. Though Arrasheed claims that Jourdan "failed to work with Plaintiff to identify assignments that could have time extensions," he never supports this claim with evidentiary support. *See* Pl.'s Resp. to Def.'s Mtn. for Summ. J., at 5 (Dckt. No. 117).

24

Arrasheed's failure-to-accommodate claim fails for lack of evidence. The Board is entitled to summary judgment.

## II.    Section 1983 Claim

Next, the Court turns to Arrasheed's claim of discrimination based on 42 U.S.C. § 1983. He claims that he was discriminated against in violation of the Equal Protection Clause.

Section 1983 provides a federal remedy against state actors who deprive others of federal rights. *First Midwest Bank ex rel. Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021). To prevail, a plaintiff must show "that: (1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was visited upon him by a person or persons acting under color of state law." *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009).

Municipalities and municipal entities are "person[s]" under section 1983 and may be held liable for *their own* violations of the federal Constitution and laws. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). But crucially, the statute does not incorporate the principle of vicarious liability. *See J.K.J. v. Polk County*, 960 F.3d 367, 377 (7th Cir. 2020) (en banc). Under *Monell*, a municipality may be held liable for its own violations of federal law, not for the violations of its employees or agents. *See Bohanon v. City of Indianapolis*, 46 F.4th 669, 675 (7th Cir. 2022). This is "an important caveat" meant to ensure "that the challenged conduct is properly attributable to the municipality itself." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) (quotation marks omitted).

Therefore, "a plaintiff can prevail on a *Monell* claim for municipal liability only when challenging the 'execution of a government's policy or custom, whether made by its lawmakers

25

or by those whose edicts or acts may fairly be said to represent official policy.'"  *Bohanon*, 46 F.4th at 675 (quoting *Monell*, 436 U.S. at 694).

The Seventh Circuit has recognized three types of government action that can support municipal liability under section 1983:  "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority."  *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019) (quotation marks omitted).

In addition to showing a municipal policy or custom, a plaintiff "must show that the policy or custom demonstrates municipal fault" to prove a *Monell* claim.  *Dean*, 18 F.4th at 235 (quotation marks omitted).  And he must show "that the municipality's action was the 'moving force' behind the federal rights violation."  *Bohanon*, 46 F.4th at 675 (quoting *Brown*, 520 U.S. at 404).

The Seventh Circuit has cautioned that these three requirements necessary to bring a *Monell* claim – policy or custom, municipal fault, and "moving force" causation – "must be scrupulously applied to avoid a claim for municipal liability backsliding into an impermissible claim for vicarious liability."  *Id.* at 676 (quotation marks omitted).

Here, Arrasheed's section 1983 claim fails at step one:  he has not pointed to a policy or custom of the Board that he claims caused his alleged injury.  Arrasheed has not cited an "express policy" that he claims caused his injury.  He hasn't alleged – let alone introduced any evidence of – an express Board policy.  *See* Am. Cplt., at 15–26 (Dckt. No. 57).  Instead, he complains that Jourdan's and Raichoudhuri's actions were discriminatory.  But even if those

allegations are true, "a municipality cannot be held liable *solely* because it employs a tortfeasor." *Monell*, 436 U.S. at 691.

Arrasheed complains about being placed on a PIP. Even if this Court assumes that it is an express policy of the Board to place underperforming employees on improvement plans, Arrasheed has not introduced evidence of policy language that could cause a constitutional violation when enforced. Arrasheed needs to point to specific policy language that he deems caused a constitutional deprivation. *See Spiegel*, 916 F.3d at 617 ("[A] written policy that is facially constitutional, but fails to give detailed guidance that might have averted a constitutional violation by an employee, does not itself give rise to municipal liability.") (quoting *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 392 (8th Cir. 2007) (en banc)). He has not done so. And there's no evidence (or reason to think) that a policy of placing underperforming employees on improvement plans is facially unconstitutional.

Arrasheed also has not introduced evidence that he was subject to "a widespread practice that is so permanent and well-settled that it constitutes a custom or practice" of the Board. *Spiegel*, 916 F.3d at 617 (7th Cir. 2019) (quotation marks omitted). For starters, Arrasheed has failed to allege that there is a widespread practice of discrimination such that the Board can be held liable under *Monell*. For example, Arrasheed has not alleged that the Board has a well-settled practice of using PIPs as a smoke screen for racial or disability discrimination. He doesn't claim that the Board has acquiesced in its managers placing employees on performance plans because of their race, disability, or other protected characteristic in order to fire them.

But even if Arrasheed had alleged a widespread practice or custom, he has not put forward any evidence to support that claim. "If the same problem has arisen many times and the municipality has acquiesced in the outcome, it is possible (though not necessary) to infer that

27

there is a policy at work." *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007). This requires the plaintiff "to present evidence of a widespread practice by the" municipality. *Id.* The plaintiff must "introduce evidence demonstrating that the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Valentino v. Village of South Chicago Heights*, 575 F.3d 664, 675 (7th Cir. 2009) (quotation marks omitted).

On this front, the slate is blank. Arrasheed hasn't put forth *any* evidence that would allow a policy or custom claim to proceed. He has not presented evidence about employment decisions related to any other employee. His own allegations are insufficient to establish a permanent and well-settled policy or custom of discrimination.

Finally, Arrasheed has not alleged that his injury was caused by someone at the Board "with final policymaking authority." *Spiegel*, 916 F.3d at 617. "In order to have final policymaking authority, an official must possess responsibility for making law or setting policy, that is, authority to adopt rules for the conduct of government." *Rasche v. Village of Beecher*, 336 F.3d 588, 599 (7th Cir. 2003) (cleaned up). Determining which official has final decision-making authority is a question of state law. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). "Whether a public official has final policymaking authority often turns on whether his decisions are subject to review by a higher official or other authority." *Milestone v. City of Monroe*, 665 F.3d 774, 780 (7th Cir. 2011).

"An official with decisionmaking responsibilities on firing matters is not always a policymaker under *Monell*; the official must possess *final* decisionmaking authority. And this authority must concern setting policy for hiring and firing, not merely the act of hiring or firing itself." *Kristofek v. Village of Orland Hills*, 832 F.3d 785, 799 (7th Cir. 2016) (cleaned up).

Once again, Arrasheed has not presented evidence that either Jourdan or Raichoudhuri set the Board's hiring, firing, or employment policies. He has not done enough to bring a claim based on allegations about an employee with final decision-making authority.

At the end of the day, Arrasheed's complaint focuses on his issues with his supervisors, Jourdan and Raichoudhuri. But he has chosen to sue the Board, a state actor. Under *Monell*, complaints against individual employees aren't enough to prove municipal liability. Because Arrasheed hasn't shown evidence of a policy or custom, the Board is entitled to summary judgment on his section 1983 claim. The evidentiary cupboard is bare.

### III. Section 1981 Claim

Finally, the Court turns to Arrasheed's claims of discrimination based on 42 U.S.C. § 1981. Analyzing Arrasheed's claims of discrimination based on section 1981 – whether based on race, color, or national origin – is straightforward. Because section 1981 does not provide a remedy against *state actors*, Arrasheed cannot sue the Board under this statute.

Section 1981 gives "[a]ll persons . . . the same right in every State and Territory to make and enforce contracts." 42 U.S.C. § 1981(a). The statute "prohibits racial discrimination when making and enforcing contracts." *DJM Logistics, Inc. v. FedEx Ground Package Sys., Inc.*, 39 F.4th 408, 411 (7th Cir. 2022).

The Seventh Circuit has held that section 1981 "does not create a private right of action against state actors." *Campbell v. Forest Preserve Dist.*, 752 F.3d 665, 671 (7th Cir. 2014). Instead, "[section] 1981 itself provides a remedy for violations committed by private actors, but an injured party must resort to [section] 1983 to obtain relief for violations committed by state actors." *Id.* at 667. "[Section] 1983 is 'the exclusive remedy for violations of [section] 1981

committed by state actors.'" *Barnes v. Bd. of Trs. of Univ. of Ill.*, 946 F.3d 384, 389 n.1 (7th Cir. 2020) (quoting *Campbell*, 752 F.3d at 671).

Here, Arrasheed has sued only the Board. The Board is a state actor. *See* 105 ILCS 5/34-18 (granting the Board "general supervision and jurisdiction over the public education and the public school system of the city"); *Towner ex rel. Towner v. Bd. of Educ.*, 657 N.E.2d 28, 32 (Ill. App. Ct. 1995). It cannot be sued under section 1981. And while the substance of a section 1981 claim can be brought under section 1983, Arrasheed's section 1983 claim fails for the reasons already given. He has not shown that a policy or custom caused his injuries, as required by *Monell*.

The Board is entitled to summary judgment on Arrasheed's section 1981 claims.

**Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment is granted.

Date:   December 12, 2022

_____

Steven C. Seeger
United States District Judge